[Crim. No. 3995. Fifth Dist. Feb. 18, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
GEORGE STANLEY GOTT, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Richard G. Fathy and Eric J. Coffill, Deputy State Public Defenders, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Gregory W. Baugher and James Ching, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**HOPPER, Acting P. J.**—Appellant (Gott), convicted of murder, appeals contending the judgment should be reversed because the trial court erred (1) in denying Gott's motion to exclude evidence of an interview conducted at the jail after a deputy public defender was denied access to Gott, (2) in failing to instruct the jury on imperfect self-defense, and (3) in failing to award good-time/work-time conduct credits.

Discussion of the contentions does not require a detailed account of the facts of the murder. The pertinent facts may be summarized as follows:[1]

On May 1, 1978, Gott was lawfully arrested on a charge of murder. He was taken from Atascadero to the sheriff's facility in San Luis Obispo. He was advised of his constitutional rights, understood them and waived his right to remain silent and his right to an attorney. He gave a statement to investigating detective Larry Hobson. Detective Hobson's interrogation ended at approximately 11:30 p.m. and Gott was placed in a cell at the county jail. Arrangements were made to have two psychiatrists and a psychologist examine Gott on the morning of May 2d. At approximately 7 to 7:30 a.m. Dr. James Hollingsworth arrived at the jail to examine Gott. Between 8:30 and 9 a.m., Deputy Public Defender Ashbaugh arrived and asked permission to see Gott. By that point Dr. Hollingsworth had completed his examination. Before Dr. Hollingsworth conducted his examination he advised Gott of his

---

[1]This summary is based on the supplemental clerk's transcript, a six-page document of stipulated facts relating to the motion to suppress. While the district attorney did not sign the stipulation, it is clear from the reporter's transcript that the facts were agreed to, with two corrections. The changes (corrections) to the stipulation were stated and evidence put on to support one of the changes. With the exception of these two changes the district attorney did agree that the stipulation stated the true and correct facts. The facts given above include the two corrections. Although respondent argues that the record is insufficient, we disagree and will discuss the contentions raised by Gott.

constitutional rights and Gott waived his right to remain silent and his right to an attorney.

Deputy Public Defender Ashbaugh was denied permission to visit Gott. In the early afternoon Dr. Donald Patterson also came to examine Gott. Later in the evening Gott was seen by Dr. William Kuenstler, a psychologist, who performed a series of psychological tests.

During each of these interviews Gott waived his right to remain silent and his right to an attorney. Gott was advised of his *Miranda*[2] rights by each doctor. Gott was never informed of the presence of Deputy Public Defender Ashbaugh on the morning of May 2, 1978.

The criminal complaint charging Gott with murder was filed on May 3, 1978. Shortly thereafter Gott was arraigned and was appointed counsel. Appointed counsel was the public defender.

Of the three persons who interviewed Gott on May 2d, only one testified for the prosecution. Dr. Donald Patterson testified that in his opinion Gott was not so intoxicated that he could not form the intent to kill nor harbor malice. Dr. Patterson further opined that Gott was not suffering from amnesia or an alcoholic blackout. Dr. Hollingsworth was called by the defense. However, Dr. Hollingsworth was not asked his opinion as to Gott's mental state on the night of the killing.

■ Gott contends that the trial court erred in allowing the prosecution to elicit testimony from Dr. Patterson concerning Gott's mental state on the night of the killing. Gott argues that this testimony violated his right to counsel under *In re Brindle* (1979) 91 Cal.App.3d 660 [154 Cal.Rptr. 563].

We are not persuaded.

Gott's reliance on *Brindle* is misplaced. Gott calls our attention to the following language in *Brindle* at page 677: "To remove law enforcement from regulating the performance of the public defender, a function they are neither legally mandated nor necessarily equipped to perform, we hold that when the public defender requests to consult with a person in custody, he should be advised the public defender is present or acces-

---

[2]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]

sible, and a determination made whether the individual wishes to consult with such counsel."

*Brindle* does not hold that when a public defender requests to consult with an inmate (other than a person who has already requested the services of the public defender), failure to notify the inmate that the public defender is present results in a denial of counsel to that inmate and requires suppression of any extrajudicial statement made by the inmate after the time of arrival of the public defender.[3]

Petitioners in *Brindle* were inmates who had already asked the public defender to represent them. The officials at the penal facility refused to allow the public defender access to the petitioners because the petitioners had not yet been charged and had counsel appointed by a court. Petitioners in their petition for writ of habeas corpus prayed for access to the public defender. The trial court granted relief far in excess of the relief requested by petitioners. In *Brindle* this court affirmed the trial court insofar as the order granted relief to the named petitioners but reversed in all other respects and set out the proper procedure to be followed by the correctional authorities.[4] (*Id.*, at p. 683.)

As we noted in *Brindle*, the expansive relief granted by the trial court was only requested during argument and no such relief was prayed for in the petition for writ of habeas corpus. (*Id.*, at p. 675.) We went on and noted that the order was improper because the record did not show there was a proper "class" in need of the orders of protection. (*Id.*, at p. 676.) Additionally, we reiterated that the right to counsel is the defendant's. "The public defender is not afforded by statutory authority or decisional law the wide range of authority to personally consult with all detained persons 'under investigation in any criminal matter' in the absence of a request for counsel communicated directly or through a third party . . . ." (*Id.*, at p. 677.)[5]

---

[3]We note in passing that there is nothing in the record before us which even remotely suggests that Gott would have requested to see the public defender if he (Gott) had been told the public defender was at the county jail or that Gott would not have spoken to Dr. Patterson. Gott was given at least four *Miranda* warnings and at no time did he indicate a desire to have counsel.

[4]The duties and obligations announced in the portion of *Brindle* quoted above may, upon proper showing, be enforced by appropriate writ.

[5]This quotation, appropriately, is within the same paragraph as the portion of the opinion upon which Gott relies.

*Brindle* did not give the public defender the right to see any inmate not yet represented by counsel. Rather, it told correctional and other authorities to give inmates who had asked to see the public defender notice that the public defender was there so the inmate could decide whether or not he or she wanted to consult with the public defender. (See *Brindle*, at p. 682.) In the quotation from *Brindle* relied upon by Gott, this court was trying to make it clear that law enforcement and correctional officials have no authority to regulate the performance of the public defender and we set out a proper procedure to be followed by law enforcement or correctional authorities. *Brindle* does not engraft additional appendages on *Miranda* or one's constitutional right to counsel.

Under all of the circumstances the motion to exclude evidence of Dr. Patterson was properly denied. There was no error.

■ Gott's contention that the trial court prejudicially erred when it failed to instruct the jury *sua sponte* that an honest though unreasonable resort to deadly force in self-defense constitutes manslaughter fails.

*People* v. *Flannel* (1979) 25 Cal.3d 668 [160 Cal.Rptr. 84, 603 P.2d 1], holds that trial courts do have a duty to instruct, *sua sponte*, that an honest but unreasonable belief deadly force is necessary reduces a murder to manslaughter. (*Id.*, at pp. 679-680, 682-683.) However, *Flannel* also explicitly notes that "[T]he unreasonable belief rule, henceforth in cases not yet tried, should be considered a general principle for purposes of jury instruction, no less than the analogous doctrine of diminished capacity." (*Id.*, at p. 682.) The case before us was tried long before *Flannel* was decided and it was not error for the trial court to omit instructions on imperfect self-defense. (*Id.*, at p. 683; *People* v. *Martin* (1980) 108 Cal.App.3d 1014, 1019 [167 Cal.Rptr. 33].)

■ Gott's contention that Penal Code sections 2900.5 and 4019 entitle him to good-time/work-time credits for presentence custody has merit. The Supreme Court decision in *People* v. *Sage* (1980) 26 Cal.3d 498 [165 Cal.Rptr. 280, 611 P.2d 874], holds that equal protection compels such conduct credits.

The judgment is affirmed. The Department of Corrections is directed to determine the presentence conduct credits, if any, to which appellant

is entitled upon appellant's application for administrative determination of such credits.

Zenovich, J., and Stone (W. A.), J.,* concurred.

A petition for a rehearing was denied May 19, 1981, and appellant's petition for a hearing by the Supreme Court was denied May 20, 1981. Bird, C. J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.