[No. AO15790. First Dist., Div. One. Mar. 13, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
GRACE KATHRYN LOCKE, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Joel Kirshenbaum, Joan W. Howarth and Elaine L. Sierra, Deputy State Public Defenders, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Herbert F. Wilkinson, Eugene W. Kaster, Thomas A. Brady and Martin S. Kaye, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ELKINGTON, J.**—Defendant Grace Locke was found guilty by a jury of attempted murder in the second degree, with deadly weapon and great bodily injury findings. Imposition of judgment was suspended and she was placed on probation for three years. She appeals from "the final judgment of conviction" which we treat as from the order imposing probation, as was obviously intended. (See Pen. Code, § 1237, subd. 1.)

We reverse the order imposing probation for reasons as follow.

■ It is argued by defendant that: "The trial court's error in admitting appellant's confession obtained in violation of her previously invoked *Miranda* rights requires reversal of appellant's conviction."

The relevant evidence is uncontroverted.

Following the charged criminal incident, Police Officer Tealdi at "*06.35 hours*" (i.e., 6:35 a.m.) took defendant into custody, and she was properly admonished by him as to her *Miranda* rights. As stated by the officer, "she

elected not to say anything until she saw counsel." She remained in Officer Tealdi's custody for at least the next three hours, during which time the officer asked her no "questions about the incident." And during that period nothing further was said, or done, about the desired attorney.

At about "*9:45 . . . in the morning*" she was placed by Officer Tealdi in the custody of Officer McCool, who was told that she did not wish to talk about the matter and, as noted, that she "had elected not to say anything until she saw counsel." The second officer, McCool, again explained defendant's *Miranda* rights to her. She repeated that "she wanted to speak with a lawyer." And again, nothing further was said, or done, about such a lawyer; nor was she advised that she could use a telephone in securing one. The officer and defendant remained together in the same room. And her expressed wish not to talk about the case was respected by the officer.

But soon defendant's eyes watered and she started crying and talking. As testified by the officer she said: " 'I just want to die,' or words to that effect. [Because] she seemed upset, and if some words would console her, [I said:] 'Don't be ridiculous. He's not dead. It's not the end of the world.' . . . She seemed upset, and if some words would console her, then I felt that I should. It was rather a spontaneous thing on my part. [Defendant continued talking and:] She—like I say—it was a rather disjointed conversation, but the meat of the conversation was that they had gone out that night. That they had 3 drinks. That after having left the dance, they had an automobile accident. They walked to a payphone. That they caught a cab to the apartment. They entered the apartment. They had a small talk, or engaged in small talk. She spoke of her having teased him, about a girl that was making eyes at him at the party. She indicated that she continued teasing him once they got to the apartment. And she spoke of the victim having struck her several times about the head. She said that she picked up a knife, followed him to another room, at which point, he, the victim, began to strike her multiple times about the head again. At which point in time, she stabbed him. Thereafter, she went to a phone, and called her daughter, to come pick her up at the victim's location. . . . I did not during her disjointed conversation ask her any questions. Only after I assumed she was through, did I ask any questions to clarify. . . . It might not have been in exactly that order that it was spoke of, but then subsequent to that, I asked her questions to straighten it out."

The trial court found the statements made by defendant *prior to any questions "to clarify,"* to be "spontaneous, voluntary and admissible," and Officer McCool was thereafter permitted by the court to relate *those statements* to the jury.

But nevertheless the question here arises as to the duty, if any, of a police officer after a proper *Miranda* admonition to a person in custody, who states that she has elected not to say anything until she has seen counsel. No express authority on the subject has been proffered us, and we ourselves have found none.

A *Miranda* explanation of one's rights must be meaningfully given and reasonably implemented, in order that the constitutional purpose be served. We are of the opinion, under the facts and circumstances of a case such as this, that a minimal requirement is that the arrested suspect be told of his or her right, and be given an opportunity, to use a telephone for the purpose of securing the desired attorney. Such telephone calls should be allowed immediately upon request, or as soon thereafter as practicable. (Cf. Pen. Code, § 851.5, subds. (b), (c); *In re Newbern* (1961) 55 Cal.2d 500, 507 [11 Cal.Rptr. 547, 360 P.2d 43].) Anything less would make of *Miranda* a hollow ineffectual pretense.

We accordingly find prejudicial error of constitutional dimension. (See *People* v. *Douglas* (1964) 61 Cal.2d 430, 434 [38 Cal.Rptr. 884, 392 P.2d 964]; *In re Brindle* (1979) 91 Cal.App.3d 660, 680 [154 Cal.Rptr. 563].)

Since the circumstances giving rise to defendant's remaining claims of error will probably not recur at another trial, we do not consider them.

The order imposing probation is reversed.

Racanelli, P. J., and Holmdahl, J., concurred.

A petition for a rehearing was denied April 5, 1984, and respondent's petition for a hearing by the Supreme Court was denied June 13, 1984.