[No. E004409. Fourth Dist., Div. Two. May 16, 1989.]

Conservatorship of the Person and Estate of RUBY BERRY.
JOSEPH E. TAYLOR, as Public Defender, etc., Petitioner and
Respondent, v.
JOHN J. RYAN, as Public Guardian, etc., Objector and Appellant.

[No. E004410. Fourth Dist., Div. Two. May 16, 1989.]

Conservatorship of the Person and Estate of CORA AYAKATUBBY.
JOSEPH E. TAYLOR, as Public Defender, etc., Petitioner and
Respondent, v.
JOHN J. RYAN, as Public Guardian, etc., Objector and Appellant.

[No. E004411. Fourth Dist., Div. Two. May 16, 1989.]

Conservatorship of the Person and Estate of DEBORAH SMITH.
JOSEPH E. TAYLOR, as Public Defender, etc., Petitioner and
Respondent, v.
JOHN J. RYAN, as Public Guardian, etc., Objector and Appellant.

[No. E004412. Fourth Dist., Div. Two. May 16, 1989.]

Conservatorship of the Person and Estate of CHARLES SMITH.
JOSEPH E. TAYLOR, as Public Defender, etc., Petitioner and
Respondent, v.
JOHN J. RYAN, as Public Guardian, etc., Objector and Appellant.

## COUNSEL

Joseph E. Taylor, Public Defender, in pro. per., and Cheryl Thompson, Deputy Public Defender, for Petitioner and Respondent.

Gerald J. Geerlings, County Counsel, and Pamela J. Anderson, Deputy County Counsel, for Objector and Appellant.

## OPINION

**McDANIEL, J.**—In these four cases which have been consolidated on appeal for the purposes of briefing, oral argument, and opinion, the Public Guardian of the County of Riverside (Public Guardian) has appealed from various orders of the Riverside County Superior Court allowing and directing payment of attorneys' fees to the Public Defender of the County of Riverside (Public Defender) for services rendered to conservatees for whom the Public Guardian had been appointed conservator.

### FACTS

In the Ruby Berry case, the Public Guardian was appointed temporary probate conservator of the person of Ruby Berry. Ms. Berry objected to the appointment of the Public Guardian as her conservator, and so the Public Defender was appointed to represent her. Thereafter, the Public Guardian was appointed permanent conservator of both Berry's estate and person. The Public Defender was never relieved as Berry's attorney of record, nor did it seek leave to substitute out as attorney of record. In point of fact, the Public Defender continued to represent Berry in proceedings involving the review of, and objection to, the Public Guardian's accountings, and a petition by the conservator for independent powers to sell the conservatee's property. The Public Defender also visited the conservatee and discussed with her the economic and physical ramifications of cataract surgery.

In the Cora Ayakatubby, Deborah Smith, and Charles Smith cases, Deborah Johnson, the Riverside County conservatorship investigation officer, was appointed temporary Lanterman-Petris Short Act (LPS) conservator of the persons of Ms. Ayakatubby, Ms. Smith, and Mr. Smith, and the Public Defender was appointed to represent them in the conservatorship proceedings. In each case, the Public Guardian was ultimately appointed as the permanent LPS conservator of the conservatees' estates and persons. The Public Defender was never relieved as these conservatees' attorney of record, nor did it seek leave to substitute out as attorney of record. Instead, after the permanent conservatorships were established, it continued to represent them in proceedings involving review of, and objection to, the Public Guardian's accountings, the filing of an order to show cause regarding the Public Guardian's failure to file an accounting, authorization for medical treatment, and a petition to increase one conservatee's burial trust.

The Public Guardian did not object to the Public Defender's representation of the conservatees in the proceedings noted above; otherwise, it did not object to the award of attorneys' fees to the Public Defender in connection with some of the earlier accountings. However, at later accountings, the Public Guardian *did* object to the Public Defender's fee requests on several grounds, namely: (1) that the fees requested exceeded the hourly rate set by the board of supervisors for services performed by the Public Defender; (2) that the fees could not be awarded for services not listed in Probate Code section 1471; (3) that the fees requested were unreasonably high given the size of the conservatee's estate, and (4) that the services provided by the Public Defender duplicated services provided by the court.

These objections were overruled, and the Public Defender was awarded attorneys' fees in all four cases. The court found that the Public Defender had been appointed pursuant to Probate Code section 1471, subdivisions (a) and (b), and that the services it had provided were helpful to the resolution of the matters and necessary to protect the conservatees' interests. The probate court specifically stated, in the Ruby Berry case, "Once appointed the Public Defender has the duty as the attorney for the conservatee to perform all legal services required to properly represent the conservatee. This duty continues until the Public Defender is relieved by the court as the attorney for the conservatee or his duty terminates by operation of law. This duty is no less than the duty imposed on private legal counsel."

The Public Guardian then filed notices of appeal from the orders awarding attorneys' fees to the Public Defender.

## ISSUES RAISED ON APPEAL

The consolidated appeals raise the following issues: (1) whether the Public Guardian has standing to object to either the Public Defender's represen-

tation of conservatees and proposed conservatees in certain proceedings or to the award of attorneys' fees to the Public Defender for such representation; (2) whether the Public Guardian waived its right to object to the award of attorneys' fees to the Public Defender; (3) whether the Public Defender is entitled to attorneys' fees for representing conservatees and proposed conservatees in proceedings not specified in Probate Code sections 1471, 1852 and 3205; (4) what constitutes the proper hourly rate allowable as attorneys' fees to the Public Defender; (5) whether the trial court exceeded its jurisdiction by awarding fees in excess of those prayed for in the Public Defender's petition for fees and the amendment thereto; (6) whether the probate court erroneously "double-billed" one of the conservatee's estates for Public Defender services; and (7) whether the probate court abused its discretion by awarding unreasonably high fees to the Public Defender, given the limited funds available in the conservatee's estate.

DISCUSSION

*Does the Public Guardian Have Standing to Object to the Public Defender's Decision to Represent the Conservatees?*

 The Public Defender asserts that the Public Guardian has no standing to attack the Public Defender's representation of either Probate Code section 1400 et seq. (probate) or Lanterman-Petris Short-Act (Welf. & Inst. Code, § 5000 et seq.) (LPS) conservatees. Relying on *In re Brindle* (1979) 91 Cal.App.3d 660, 681 [154 Cal.Rptr. 563], the Public Defender urges that the Public Guardian's sole remedy is to ask the county board of supervisors to take appropriate action to forbid the Public Defender from representing particular clients.

In *In re Brindle, supra,* the public defender of San Luis Obispo County filed habeas corpus proceedings on behalf of certain named prison inmates, seeking relief from alleged interference by prison officials with the inmates' ability to contact the public defender there. The trial court issued a writ granting the relief prayed for, and additionally ordering all law enforcement agencies and correctional institutions within the county to allow the public defender access to any and all persons (not just those named in the proceedings before the court) who were incarcerated, being interrogated, or who were under investigation, and to also allow the public defender an opportunity to consult with such persons as to whether they wished to be represented by the public defender and whether they were financially eligible for such assistance.

The People, via the Attorney General, appealed from this order. The reviewing court reversed the order to the extent it purported to grant the public defender the power unilaterally to decide to confer with prisoners

who had not requested counsel or who had waived their right to counsel, noting, among other factors, that Government Code section 27706, subdivision (a) provides that the public defender's duties arise only upon " 'request of the defendant or upon order of the court.' " (*In re Brindle, supra,* 91 Cal.App.3d at pp. 672-673.)

However, the court also held that law enforcement officials did not have the right to determine the public defender's legal and ethical obligations, that being a function such officials were neither legally mandated nor necessarily equipped to perform. (*In re Brindle, supra,* 91 Cal.App.3d at p. 677.) The court held further that the public defender is as administratively equipped as the courts to make the preliminary determination of indigency and the right to the services of the public defender's office. (*Id.,* at p. 678.) The court specifically held that neither the district attorney's office nor the Department of Corrections has the authority to oversee the independent statutory function of the public defender's office (*id.,* at p. 679), and that "[i]n determining whether to provide the services of his office, the public defender 'exercises an original power vested in him by statute, not superior to but coequal with the power of the court' to determine whether a person is entitled to be represented by the public defender.' [Citation.] The 'Upon request' condition of section 27706, subdivision (a), is an important alternative circumstance to formal court appointment to entitle a person to representation by the public defender and cannot be read out of the statute as is the effect of the trial court's order [here]. [Citation.] *Since the court cannot challenge the public defender's decision that a person is entitled to be represented by him, the district attorney, prison officials and law enforcement agencies on similar logic do not possess the discretion conferred independently by statute upon the public defender to determine who should receive his services.* Moreover, police or correctional officials are not by law the arbiters of the conduct of the public defender.

"*Appellant has chosen the wrong procedure and an inappropriate forum to examine the public defender's compliance with his statutory, legal and ethical responsibilities.* As the court said in *Ingram* v. *Justice Court* [(1968) 69 Cal.2d 832, 842 (73 Cal.Rptr. 410, 447 P.2d 650, 36 A.L.R.3d 1391)]: 'The overwhelming majority of public defender offices in this state are appointive, and Government Code section 27703 declares that in such event the public defender 'shall be appointed by the board of supervisors *to serve at its will.*' [Original italics.] If a holder of that office abuses his powers by consistently undertaking to represent at county expense persons who are not in fact indigent [entitled to his services], the board of supervisors may take such remedial steps as are deemed necessary, including his reprimand, suspension or discharge, or the institution of appropriate court action.' (Fn. omitted.) *The Legislature has recognized '. . . "If abuses develop in individual cities or counties of the state, it appears to us that the proper avenue of*

*appeal is to the judicial council or the county board of supervisors.'' '* (*Ibid.*) (Fn. omitted.)'' (*In re Brindle, supra,* 91 Cal.App.3d at pp.681-682, italics added.)

Based on the foregoing only, we would agree with the Public Defender that the Public Guardian has no standing in this forum to attack the Public Defender's decision to represent a given client. However, neither party has noted the effect of Government Code section 27707 on the holding in *Ingram* v. *Justice Court* (1968) 69 Cal.2d 832 [73 Cal.Rptr. 410, 447 P.2d 650, 36 A.L.R.3d 1391], the authority on which the holding in *Brindle* is based.

In 1969, promptly after the California Supreme Court had held in *Ingram* that the public defender's decision to represent a client could not be overridden by the court (*Ingram* v. *Justice Court, supra,* 69 Cal.2d 832, 839-840), the Legislature enacted Government Code section 27707, which provides, in relevant part, that: "The court in which the proceeding is pending may make the final determination in each case as to whether a defendant or person described in [Government Code] Section 27706 [as being eligible for representation by the public defender] is financially able to employ counsel and qualifies for the services of the public defender. The public defender shall, however, render legal services as provided in subdivisions (a), (b) and (c) of Section 27706 for any person the public defender determines is not financially able to employ counsel until such time as a contrary determination is made by the court. If a contrary determination is made, the public defender thereafter may not render services for such person except in a proceeding to review the determination of that issue or in an unrelated proceeding."

The enactment of Government Code section 27707 thus provides for the judicial review of the public defender's determination of indigence. (*Roswall* v. *Municipal Court* (1979) 89 Cal.App.3d 467, 471 [152 Cal.Rptr. 337].) This review is apparently discretionary, as section 27707 provides that the court *may* make the final determination of eligibility for representation by the public defender.

Although Government Code section 27707 specifically states that the public defender is to render legal services as provided in subdivisions (a), (b) and (c) of section 27706 for any person the public defender determines is not financially able to employ counsel until such time as a contrary determination is made by the court, there is no similar mandate in section 22707 that the public defender is to render legal services as provided in subdivision *(d)* of section 27706, the subdivision which requires the public defender to provide legal services to conservatees.

■ Reading Government Code sections 27706 and 27707 together, we construe this absence of any reference to subdivisions (d) through (g) in the

second sentence of section 27707 to mean that once the public defender has made an initial determination that a person is eligible for legal services as provided under subdivisions (a), (b) and (c) of section 27706 (which involve representation of defendants in criminal prosecutions, representation of plaintiffs in actions for the collection of wages and other demands, and representation of defendants in civil litigation in which, in the public defender's judgment, the defendant is being persecuted or unjustly harassed), the public defender may not *unilaterally* decide to withdraw from representation, but must continue its representation of such persons until the *court* determines that the client is financially able to employ counsel, but that once the court makes a final determination that such persons *are* financially able to employ counsel, the public defender *must* not continue to provide such persons with legal services.

The court's ability to require the public defender to withdraw from representation of these clients, of course, is not unlimited, and is circumscribed by other applicable principles, such as the potential prejudice to the defendant that a change in counsel might cause. (See *Roswall* v. *Municipal Court, supra,* 89 Cal.App.3d at pp. 472-475.) A nonindigent client's right to continued representation under such circumstances, however, was held in *Roswall* to be balanced by the county's right, pursuant to Penal Code section 987.8, to reimbursement for the cost of providing such representation. (*Id.,* at p. 475.)

In contrast, although the court has the right to make the final determination in each case as to whether a person described in Government Code section 27707, subdivisions (d) through (g) (which involve conservatees, habitual and serious youthful offenders, criminal defendants in capital cases and criminal and juvenile defendants in proceedings involving the nature or conditions of detention, treatment or punishment) is financially able to employ counsel and qualifies for the services of the public defender, the public defender is apparently able, after it has initially determined that a person described in subdivisions (d) through (g) is entitled to its representation, to make a subsequent determination on its own that such representation is not appropriate and to withdraw as attorney of record without a *court* determination of financial ineligibility (subject, of course, to the court's supervisory power under Code of Civil Procedure section 128). Furthermore, the court's determination that persons described in subdivisions (d) through (g) *are* financially able to employ counsel, which determination is contrary to that of the public defender, does not preclude the public defender from continued representation of such persons.

Based on the foregoing, we conclude that in cases involving the public defender's representation of persons described in subdivision (d) of Government Code section 27706, i.e., conservatees, the public defender's

decision to continue to represent the conservatee is not subject to judicial review or control, although the probate court does have the right to make the final determination of the conservatee's financial ability to employ counsel and his or her qualification for the services of the public defender.

Having come to this conclusion, we turn now to the related but severable issue of the Public Guardian's standing to question the Public Defender's *right to receive attorneys' fees for such representation.*

### *Does the Public Guardian Have Standing to Object to the Public Defender's Request for Attorney's Fees for Services Performed While Representing the Conservatees?*

As the Public Guardian points out, the Public Guardian, as conservator, has a duty to pay from the conservatee's estate the reasonable expenses incurred in the collection, care and administration of the estate, and to seek court authorization for the payment of compensation to an attorney for the conservatee. (Prob. Code, § 2430, subd. (a)(4)(iii).) The Public Guardian, as conservator, also has a right to appeal an award of attorneys' fees so as to preserve the conservatee's estate from unjustified expenses. (Prob. Code, § 2750, subd. (g); see *Estate of O'Donnell* (1948) 85 Cal.App.2d 1, 13 [192 P.2d 94].)

Thus, it is clear that the Public Guardian *does* have standing to challenge the award of attorneys' fees to the Public Defender, even if the court is not an appropriate forum in which to challenge the Public Defender's *representation* of these conservatees.

### *Did the Public Guardian Waive Its Right to Object to Payment of Fees to the Public Defender?*

The Public Defender argues that the Public Guardian waived its right to object to the Public Defender's right to attorneys' fees when it failed to object to the Public Defender's representation of the conservatees at various proceedings of the kind not specified in Probate Code sections 1471, 1852 or 3205. However, as noted above, the issues of the *power* of the Public Defender to decide whether or not to represent a client, and its *right* to compensation for such representation, although related, are separate issues. Therefore, the failure to object to representation is not equivalent to a failure to object to compensation, and thus there was no waiver of the right to object to the award of attorneys' fees.

*Is There Any Statutory or Other Basis Upon Which the Public Defender May Be Awarded Attorneys' Fees for the Services in Question?*

We next consider whether the awards of fees to the Public Defender were appropriate either under Probate Code sections 1471 and 1472, upon which the probate court based its award of fees, or under any other theory. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10] (a decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason).)

*Under What Theories May Attorneys' Fees Be Awarded?*

According to the Public Guardian, "Absent specific statutory authorization, an attorney is not entitled to compensation or expenses incurred in representing a person upon the appointment of the Court. (40 Ops.Atty Gen. 89 (1962); 26 Ops.Atty Gen. 216 (1955).)"

A review of the Attorney General opinions cited above, and of the authorities on which those opinions relied, indicates that the above assertion is perhaps too narrow, because it is clear that fees may be awarded on other than statutory authority.

■ "Generally, fees paid to attorneys are not recoverable from the opposing party either as costs, damages or otherwise in the absence of express statutory *or* contractual authority." (*Viner* v. *Untrecht* (1945) 26 Cal.2d 261, 272 [158 P.2d 3], italics added; see also Code Civ. Proc., § 1021.)

In addition, attorneys' fees may also be awarded in certain circumstances where neither statutory nor contractual provisions for their recovery exist. For example, attorneys' fees may be recovered, absent such provisions, under "exceptional circumstances." (*Prentice* v. *North American Title Guar. Corp.* (1963) 59 Cal.2d 618, 620 [30 Cal.Rptr. 821, 381 P.2d 645].) "In *Prentice* . . . and the cases upon which it is based and which have followed it, courts have allowed such fees and expenses when exceptional circumstances have been found to exist. Such exceptional circumstances have been the result of weighing by courts of policy considerations —when the factors in favor of allowance, rather than any hard and fast rule, have dictated the justice of the allowance of such damages—on a case-by-case basis." (*Trails Trucking, Inc.* v. *Bendix-Westinghouse etc. Air Brake Co.* (1973) 32 Cal.App.3d 519, 524 [108 Cal.Rptr. 30].)

Court-created exceptions to the general rule include circumstances: (1) in which the litigation for which fees are requested has created or preserved a common fund for the benefit of a number of people (the "common fund"

doctrine); (2) in. which the litigation has resulted in a judgment which confers a substantial benefit on a defendant, such as in a corporate derivative action (the "substantial-benefit" rule, which is an extension of the common fund doctrine (*Fletcher* v. *A. J. Industries, Inc.* (1968) 266 Cal.App.2d 313, 323 [272 Cal.Rptr. 146])); (3) in which the litigation has secured benefits for a broad class of people by effectuating a strong public policy (the "private attorney general" concept); and (4) in which the party to whom the fees are awarded was forced to employ counsel to defend an action against a third party because of the tort of the defendant (the "tort of another" or "third party tort" exception). (*Gray* v. *Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 505 [198 Cal.Rptr. 551, 674 P.2d 253, 44 A.L.R.4th 763] and cases cited therein.)

These court-created bases for fee awards apparently apply to court-appointed as well as private attorneys, for, although the Attorney General opinions noted above purport to restrict the payment of fees to appointed attorneys to those fees allowed by statute, the authorities relied upon in the Attorney General opinions do not apply specifically to the award of attorneys' fees to *court-appointed* attorneys for indigents; neither do they restrict the payment of fees to *appointed* attorneys to situations involving only a *statutory* basis. Presumably, such attorneys are as eligible for an award of fees under the doctrines and rules noted above as would be private attorneys, given the existence of an appropriate public policy which would be vindicated by the award of fees. (See, e.g., *Serrano* v. *Priest* (1977) 20 Cal.3d 25, 48 [141 Cal.Rptr. 315, 569 P.2d 1303] (holding that the denial of the benefits of the "private attorney general" rule to attorneys employed by nonprofit public interest law firms would be inconsistent with the rule itself).)

The Public Guardian also asserts that "Moreover, the collection of fees for Public Defender services *from the person on whose behalf the services were rendered* must also be authorized by statute. *Gubler* v. *Commission on Judicial Performance* (1984) 37 Cal.3d 27, 207 Cal.Rptr. 171." (Italics added.) *Gubler* involved improper practices used by a court commissioner in his attempts to force defendants to pay their fees for appointed counsel, such as giving defendants the impression that payment of such fees was a condition of probation. *Gubler* is not relevant to the situation here. A review of the "common fund" and "substantial benefit" cases noted above indicates that a court may order a party who has been benefitted by an attorney's services to pay attorneys' fees despite the absence of statutory authorization. Thus, the assertion that such fees can only be ordered to be paid if a statute allowing the award exists is again too narrow, and we reject it.

Having now discussed the possible theories under which attorneys' fees may be awarded, we next consider whether an award to the Public Defender under the circumstances involved in these consolidated cases was proper under any theory.

### Is There Statutory Authorization for the Public Defender's Representation of the Conservatees in These Cases?

Probate Code section 1471 provides for the mandatory appointment of legal counsel for conservatees and proposed conservatees in certain instances. Subdivision (a) of section 1471 provides, if a conservatee or proposed conservatee is unable to retain legal counsel and *requests* the appointment of counsel "to assist in the particular matter," that "the court *shall,* at or before the time of the hearing, *appoint* the public defender or private counsel to represent the interest of such person in the following proceedings under this division:

"(1) A proceeding to establish a conservatorship or to appoint a proposed conservator.

"(2) A proceeding to terminate the conservatorship.

"(3) A proceeding to remove the conservator.

"(4) A proceeding for a court order affecting the legal capacity of the conservatee.

"(5) A proceeding to obtain an order authorizing removal of a temporary conservatee from the temporary conservatee's place of residence." (Italics added.)

Subdivision (b) of section 1471 of the Probate Code also *requires* the probate court to *appoint* the public defender or private counsel to represent a conservatee or proposed conservatee in the types of proceedings listed above even if the conservatee or proposed conservatee has *not* requested such assistance if, based upon information in the court investigator's report or obtained from any other source, the court determines that the appointment would be helpful to the resolution of the matter or is necessary to protect the interests of the conservatee or proposed conservatee.

Subdivision (c) of section 1471 of the Probate Code *requires* the probate court to *appoint* the public defender or private counsel to represent the interests of a proposed limited conservatee in any proceeding to establish a limited conservatorship.

The probate court is also required to appoint either the public defender or private counsel in certain additional circumstances: (1) in a proceeding to

restore the conservatee's right to register to vote (Prob. Code, § 1852), and (2) to obtain authorization of medical treatment of an adult conservatee who is not the subject of a conservatorship of the person. (Prob. Code, § 3205.) The court is also required to appoint the public defender or private counsel for a conservatee's spouse in transactions involving the conservatee's community or homestead property if the spouse is alleged to lack legal capacity, is unable to retain counsel, and requests representation. (Prob. Code, § 3140, subd. (c).)

Compensation for the attorneys appointed pursuant to Probate Code sections 1471, 1852, 3205 and 3140, subdivision (c) is authorized by Probate Code section 1472, which provides: *"(a) If a person is furnished legal counsel under Section 1471*:

*"(1) The court shall, upon conclusion of the matter, fix a reasonable sum for compensation and expenses of counsel and shall make a determination of the person's ability to pay all or a portion of such sum.*

*"(2) If the court determines that the person has the ability to pay all or a portion of such sum, the court shall order the conservator of the estate, or, if none, the person to pay* in such installments and in such manner as the court determines to be reasonable and compatible with the person's financial ability.

"(3) In a proceeding under Chapter 3 (commencing with Section 3100) of Part 6 for court authorization of a proposed transaction involving community or homestead property, the court may order payment out of the proceeds of the transaction.

"(4) If the conservator is not appointed for the person furnished legal counsel, execution may be issued on the order in the same manner as on a judgment in a civil action.

*"(b) If the court determines that a person furnished private counsel under Section 1471 lacks the ability to pay all or a portion of the sum determined under paragraph (1) of subdivision (a), the county shall pay such sum to the private counsel* to the extent the court determines the person is unable to pay.

*"(c) The payment ordered by the court under subdivision (a) shall be made to the county if the public defender has been appointed* or if private counsel has been appointed to perform the duties of the public defender and the county has compensated such counsel. In the case of other court-appointed counsel, the payment shall be made to such counsel." (Italics added.)

The probate court also has *discretion* to appoint *private* legal counsel for conservatees or proposed conservatees "in any proceeding under this

division if the court determines such person is not otherwise represented by legal counsel and that the appointment would be helpful to the resolution of the matter or is necessary to protect the person's interests." (Prob. Code, § 1470, subd. (a).) Payment for such counsel is authorized to be made from the person's estate. (Prob. Code, § 1470, subd. (c)(1).)

Unlike section 1471, Probate Code section 1470 makes no provision for the payment of such private counsel in the event that the person for whom such discretionarily appointed counsel is retained is indigent. However, the Law Revision Commission Comment, 1979 addition to section 1470, states, in pertinent part, "This authority [to appoint legal counsel in the court's discretion] is comparable to the court's authority to appoint private counsel to represent the minor's interests in connection with a child custody issue arising in a proceeding under the Family Law Act. See Civil Code § 4606. As to the duty of the public defender to represent an indigent upon request or upon order of the court, see Gov't Code § 27706."

It is apparent that the Law Revision Commission was under the impression that the probate court could also appoint the public defender to represent indigent conservatees or proposed conservatees in the discretionary matters involved in Probate Code section 1470. In the commission's recommendation relating to Guardian-Conservatorship Law, presented to the Governor in November 1978, it stated, under the heading "Discretionary Appointment of Private Counsel": "A provision was recently added to the Family Law Act to allow the court to appoint private counsel to represent the interests of a minor when the minor's custody is in issue. There is no comparable provision in existing guardianship law.

"The proposed law provides general authority for discretionary appointment of private counsel (but not the public defender) for a ward, proposed ward, conservatee, or proposed conservatee whenever the person is not otherwise represented and the provisions for mandatory appointment of counsel do not apply. The court has discretion to appoint counsel under the discretionary appointment provision if the court determines that the appointment would be helpful to the resolution of the matter or is necessary to protect the person's interests. As under the Family Law Act, the attorney's fees are payable privately and the county is not responsible.

"*Upon request, or upon order of the court, Section 27706 of the Government Code requires the public defender to represent a person who is not financially able to employ counsel in a guardianship or conservatorship proceeding. The proposed law does not affect this duty of the public defender.*" (14 Cal. Law Revision Com. Rep. (Nov. 1978) p. 538, fns. omitted, italics added.)

Government Code section 27706 provides, in pertinent part, that the public defender "shall perform the following duties: "... [¶] (d) Upon request, *or upon order of the court,* the public defender shall represent any person *who is not financially able to employ counsel in proceedings under Division 4 (commencing with Section 1400) of the Probate Code and Part 1 (commencing with Section 5000) of Division 5 of the Welfare and Institutions Code.*" (Italics added.)

■ It is thus apparent that the probate court has the discretion to appoint the public defender to represent *indigent* conservatees or proposed conservatees in *any* proceeding, not just those specified in Probate Code sections 1471, 1852, 3205, and 3140, in which the court determines such representation is either helpful or necessary. It is also apparent that the court does *not* have any authority to *order* the public defender to represent *nonindigent* conservatees or proposed conservatees in matters which do not fall within the provisions of Probate Code sections 1471, 1852 or 3205. (See also *Brown* v. *Superior Court* (1981) 119 Cal.App.3d 189, 189-192 [173 Cal.Rptr. 803] to the same effect. In *Brown,* the public defender challenged the court's power to order his office to represent a *nonindigent* conservatee in a proceeding not specified in Probate Code section 1471; on appeal it was held that the court did not have the power to make such an order.)

■ As noted earlier, however, the public defender also may *choose* to represent any client *it desires* to represent, and its decision in this regard cannot be attacked in this forum. (See Gov. Code, §§ 27706, 27707.) Thus, although the probate court could not *order* the public defender to represent the conservatees here involved unless it had made a determination that they were indigent, the public defender could nonetheless make its own determination that they were entitled to representation. Furthermore, once appointed by the court in connection with the proceeding to establish the conservatorship, the public defender could conclude, although the conservatee might not be indigent, that the factors militating in favor of continued representation (see, e.g., *Roswall* v. *Superior Court, supra,* 89 Cal.App.3d 467, 472-475) required it either to continue representation of the conservatee or to seek court leave to withdraw as counsel of record. (See Gov. Code, § 27706.)

■ Having determined that the Public Defender could properly represent these conservatees regardless of the nature of the proceedings involved, and that the Public Defender's decision to represent them is not subject to challenge via this appeal, regardless of their indigency or lack thereof, the next question arising is whether the court could order the conservator, i.e., the Public Guardian, to use the conservatee's estate to pay attorneys' fees to the Public Defender for the services it had performed in the instant cases.

*Is There Statutory Authorization for an Award of Fees to the Public Defender in These Cases?*

The relevant Probate Code sections do not provide for payment to the public defender for services rendered to *either* indigent *or* nonindigent conservatees or proposed conservatees under the discretionary appointment provisions of section 1470; neither do they provide for payment to the public defender for services rendered to *indigent* conservatees or proposed conservatees under the mandatory appointment provisions of section 1471. (See Prob. Code, § 1472, subds. (b) and (c).) Here, the probate court did not make any findings as to the conservatees' ability to pay. However, it is apparent that the fees ordered paid to the public defender were based in part on services rendered in connection with proceedings other than those set out in sections 1471, 1852, and 3205. Accordingly, there is no basis in the *Probate Code* for an award of fees to the public defender when the public defender has been *appointed* to represent a conservatee or proposed conservatee in a proceeding not specified in Probate Code sections 1471, 1852 or 3205.

However, Government Code section 27712, which neither party has mentioned, provides that: "(a) In any case in which a party is provided legal assistance, either through the public defender or private counsel appointed by the court, upon conclusion of the proceedings, or upon withdrawal of the public defender or private counsel, after a hearing on the matter, the court may make a determination of the ability of the party to pay all or a portion of the cost of such legal assistance. Such determination of ability to pay shall only be made after a hearing conducted according to the provisions of Section 987.8 of the Penal Code; except that, in any court where a county financial evaluation officer is available, the court shall order the party to appear before the county financial evaluation officer, who shall make an inquiry into the party's ability to pay this cost as well as other court-related costs. . . . If the court determines, or upon petition by the county financial evaluation officer is satisfied, that the party has the ability to pay all or part of the cost, it shall order the party to pay the sum to the county in any installments and manner which it believes reasonable and compatible with the party's ability to pay. . . .

"The court, or in a county which has a county financial evaluation officer, the board of supervisors, shall adjudge a standard by which to measure the cost of legal assistance provided, which standard shall reflect the actual cost of legal services provided. Appointed counsel shall provide evidence of the services performed pursuant to such standard."

We construe the phrase "appointed by the court," as that phrase is used in the first sentence of Government Code section 27712, to modify the term

"private counsel," not the entire phrase "through the public defender or private counsel," because, as noted earlier, the public defender may be appointed to represent clients, or it may voluntarily undertake such representation, and such a construction serves the purpose of making sure that the county is reimbursed, wherever possible, for services performed by the public defender pursuant to its own determination that a client is eligible for its assistance as well as pursuant to court order. Based on this construction, we hold that section 27712 allows the probate court to award attorneys' fees, or rather the cost of providing legal services, to the county in those cases in which the public defender voluntarily undertook representation of a conservatee, so long as the costs awarded take into account the conservatee's ability to pay.

Thus, to summarize, our interpretation of these Probate and Government Code sections accomplishes the implementation of several important public policies.

First, the probate court is prohibited from appointing the public defender to represent nonindigent conservatees (i.e., those whom private counsel would be willing to represent) in those proceedings which the Legislature has determined do not implicate the more serious aspects of the conservatee's existence, which allows the public defender to better control and conserve its resources for use in proceedings and for clients which it has determined require its assistance.

Second, the county will be reimbursed, to the extent possible, given the conservatee's ability to pay, for services performed by the county's employees, which increases the county's ability to continue to provide such services, and others, to the public.

Third, this interpretation takes into consideration the fact that under the discretionary appointment power of Probate Code section 1470, private counsel appointed by the court may only be paid from the conservatee's estate (Prob. Code, § 1470, subd. (c)(1); see also 14 Cal. Law Revision Com. Rep. (1978) p. 538. ("As under the Family Law Act, the attorney's fees are payable privately and the county is not responsible. . . ."), and only in an amount which is based on the conservatee's ability to pay. (Gov. Code, § 27712.) Thus, practically speaking, it may well be difficult to find private attorneys to appoint who will be willing to do a thorough job of representing a conservatee who either has, or appears to have, meager financial resources. Allowing the public defender to choose to represent such clients serves the important public purpose of making sure their interests, which may sometimes be in conflict with the interests of the conservator, are adequately represented.

*Did the Award of Attorneys' Fees to the Public Defender at an Hourly Rate in Excess of $60 for Attorney Time and $24 for Investigator Time Violate Government Code Section 54985?*

■ Government Code section 54985, subdivision (a) provides that the county board of supervisors, notwithstanding any other provision of law which prescribes or otherwise limits the amount of a fee or charge which may be levied by a county, shall have the authority to increase or decrease the amount of the fee or charge by the amount reasonably necessary to recover the cost of providing a service. Subdivision (b) provides that any person who disputes the reasonableness of such a fee or charge may request the county auditor to conduct a study to determine whether such fee or charge is reasonable.

A cost study prepared by the Riverside County auditor-controller computed the hourly rates of the civil division of the public defender's office at $60 per hour of attorney time and $24 per hour of investigative time for the 1985-1986 fiscal year. The probate court here awarded the public defender $69 per hour of attorney time and $42 per hour of investigative time for services rendered in the 1985-1986 fiscal year, doing so over the Public Guardian's objections. (The hourly rates awarded are equal to the amounts computed by the auditor-controller as being reasonable for these services during the *1986-1987* fiscal year.)

The Public Guardian urges that the court was limited to awarding the fees by Government Code section 54985, in conjunction with the study prepared by the auditor-controller, and by County of Riverside, California Board of Supervisors Policy No. B-4, which states: "Where a charge is necessary or appropriate to recover the actual cost of providing services by a County Department to other County Departments, other public agencies or various organizations or individuals, rates for such charges shall be established from time to time by Resolution or Minute Order adopted by the Board of Supervisors upon recommendation of the Auditor-Controller and the Administrative Officer."

The Public Defender urges, on the other hand, that the probate court's discretion in the award of attorneys' fees is not circumscribed by these authorities. Neither the Public Guardian nor the Public Defender is totally correct.

First, although the record contains copies of a letter from the auditor-controller to the Public Defender setting out its computations of the productive hourly rates for services performed by the Public Defender's office in fiscal year 1986-1987, and a declaration by county counsel on behalf of the Public Guardian stating that county counsel had spoken to persons in

the auditor's office who informed her that the latest cost study of the Public Defender's office in 1986 indicated that "fees to be charged by the Public Defender to any individual were $60.00 for attorney time and $24.00 for investigator's services," the record does *not* contain a copy of any "Resolution or Minute Order adopted by the Board of Supervisors." According to policy No. B-4, rates for charges are to be established by resolution or minute order of the board, not by recommendation of the auditor alone. This being so, the record is not legally sufficient to support the Public Guardian's assertion that fees of $60 and $24 per hour for attorney and investigator services represented the official rates for the cost of providing public defender legal services.

Second, although the authorities relied upon by the Public Guardian, in and of themselves, do not circumscribe the court's ability to award whatever fees it determines are reasonable, they *do* circumscribe the court's power to award such fees when read in connection with Government Code section 27712, the statute which we have determined gives the court the authority to award attorneys' fees in these cases.

Government Code section 27712 allows the court to order the party to whom legal assistance was provided by the public defender to pay all or a portion of the *cost* of such legal assistance. The fact that the Legislature used the phrase "cost of such legal assistance" rather than the phrase "reasonable attorneys' fees" indicates that it intended that the court could not order such a person to pay more than the actual cost to the county of providing such assistance.

Thus, because Government Code section 54985 authorizes the county board of supervisors to determine the cost of providing county services such as the legal services provided by the public defender, the probate court would be limited by Government Code section 27712 to ordering payment of no more than all or a portion of such cost. The Public Defender's petition for attorneys' fees simply stated that the amount requested was "reasonable." No showing was made by either party as to the actual *cost* of providing such services; therefore the probate court did not have an appropriate evidentiary basis upon which to grant the requested fees, and its orders must therefore be reversed.

*Did the Probate Court Exceed Its Jurisdiction by Awarding Fees in Excess of Those Prayed for in the Petition and Amendment Thereto?*

█ In the Ruby Berry case, the Public Defender prayed for attorneys' fees in the amount of $500; nevertheless it was awarded $1,118.70. The Public Guardian asserts that this award was in excess of the court's jurisdiction, because a court may not award an amount in excess of that requested

in the prayer. (*Crofoot* v. *Blair Holdings Corp.* (1953) 119 Cal.App.2d 156, 195 [260 P.2d 156].)

However, as pointed out by the Public Defender, Code of Civil Procedure section 580 provides that the relief granted may not exceed that demanded in the complaint "*if there be no answer,*" but in any other case, i.e., if the matter is contested, the court may grant any relief consistent with the case made by the complaint and embraced within the issue, if the relief be "supported by the evidence and as to which the parties were on notice, whether requested in the pleadings or not. [Citations.]" (*American Motorists, Ins. Co.* v. *Cowan* (1982) 127 Cal.App.3d 875, 883 [179 Cal.Rptr. 747].) According to the Public Defender, and not disputed by the Public Guardian, in the Ruby Berry case the Public Defender initially requested $500 for legal services. The Public Guardian objected, and the Public Defender first increased its request to $1,118.70, and then reduced the request to $500. The Public Guardian again filed objections, and the matter proceeded to hearing. The probate court therefore had before it evidence to support a determination that $1,118.70 was a reasonable amount to award for attorneys' fees.

*Did the Probate Court Err by Awarding "Double Fees" in the Deborah Smith Case?*

According to the Public Guardian, the Public Defender requested attorneys fees in the Deborah Smith case for services rendered from October 26, 1985, through December 13, 1985, despite the fact that fees for the same period already had been awarded in the order settling the fourth account current, and the fact that an order settling an intermediate account in a conservatorship proceeding has a res judicata effect with respect to any subsequent claims. (Prob. Code, § 2103; see also *Conservatorship of Harvey* (1970) 3 Cal.3d 646, 651-652 [91 Cal.Rptr. 510, 477 P.2d 742].)

In response, the Public Defender points out, although the order settling the fourth account states that the Public Defender was awarded $50 in fees, that this was a mistake, as the Public Defender had not requested fees in connection with the fourth account, and in fact the $50 awarded was never paid. That this was an error is supported by the fact that the order also states that the issue of fees for the Public Defender was reserved.

The Public Guardian concedes that the order settling the fourth account current is ambiguous, and that the "discrepancy was apparently not resolved." However, we conclude that the discrepancy *was* resolved in favor of the Public Defender when the probate court awarded the Public Defender its fees in the subsequent order.

*Was the Award of Attorneys' Fees to the Public Defender in the Deborah Smith Case an Abuse of the Probate Court's Discretion in Light of the Limited Funds Available in the Conservatorship Estate?*

 In the Deborah Smith case, at the time the fee petition was heard, the conservatee had a balance of $1,317.28 in her estate. After deducting the fees of $150 awarded in the order settling the fourth account current and the fees of $350 to the public guardian and $56 to county counsel in connection with the fifth account current, the remaining balance was $761.28. The probate court nonetheless awarded the Public Defender $519.20, thus reducing the balance to $242.08.

According to the Public Guardian, the conservatee's sole source of income is social security benefits of $671 per month, and her entire monthly benefit is expended for facility care and $35 per month for personal needs. In addition, at the time of the petition, counsel for the Public Guardian stated that the conservatee's last clothing allowance had been seven months before. Therefore, it urges, it was an abuse of discretion for the probate court to award the Public Defender the full amount of the fees requested.

In response, the Public Defender points out that the fees requested were nominal, given the services performed for the conservatee, which included two trials and preparation for a third, plus three visits by the Public Defender's investigator over a 14-month period.

As noted above, the probate court could order payment of all or part of the *cost* of the legal assistance provided by the Public Defender, but only after it had conducted a hearing according to the provisions of Penal Code section 987.8 on the ability of the conservatee to pay, or after it had received information on such ability from the county's financial evaluation officer, if any. The hearing contemplated by Penal Code section 987.8 requires consideration of several factors related to the client's present and readily discernible future financial position (Pen. Code, § 987.8, subds. (g)(2)(A) through (D)), and also provides for certain due process rights. (Pen. Code, § 987.8, subd. (e).) The section also contemplates the use of a written financial statement form subscribed under penalty of perjury by the client. The emphasis, unlike in a hearing on "reasonable attorneys' fees" in other civil cases, is on the client's ability to pay, rather than on the reasonableness of the amount being billed.

 According to the record before us, the only information before the probate court at the time it made its determination in April 1987 of what would be a reasonable amount of fees to award the Public Defender consisted of the schedules attached to the fourth account current (which had been verified under penalty of perjury by a deputy public guardian) showing that

the conservatee was receiving $634 per month in social security as of December 1985, that her hospital care at Patton cost approximately $526 per month, that she was receiving $45 per month for "personal needs," plus $100 as Christmas money, also as of December 1985, and that as of December 1985 she had cash on hand of $2,497.52. In addition, counsel for the Public Guardian stated, at oral argument at the hearing on the request for fees in 1987, that the conservatee was receiving $671 per month in social security benefits, that this entire sum was expended for her care and personal needs, and that her last clothing allowance had been in September 1986.

Although Probate Code section 1472 contemplates, as does Penal Code section 987.8, that payment will be ordered on the basis of ability to pay, we believe, given the additional safeguards provided by section 987.8, and given that the record before us indicates the probate court's decision may have been based on less than current evidence of the conservatee's financial condition, that justice would best be served if the probate court reconsiders the conservatee's financial status in connection with a hearing of the kind prescribed by Penal Code section 987.8 in the course of reviewing anew the fee petitions, which, as noted above, we must reverse because of the lack of evidence before the probate court of the actual cost of providing legal services to the conservatees.

## DISPOSITION

The orders appealed from are reversed and the probate court is directed to review the fee requests in each case in accordance with the law set forth in this opinion, and to enter orders for fees accordingly.

Campbell, P. J., and Dabney, J., concurred.